**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division**

_____

|  |  |
|---|---|
| **JANET LYNN BILLINGS,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **B & B ELECTRONICS MANUFACTURING COMPANY,** | ) |
| **707 Dayton Road** | ) |
| **Ottawa, IL 61350,** | ) **Case No.** _____ |
|  | ) |
| **Serve Registered Agent:** | ) |
|  | ) |
| **CT CORPORATION SYSTEM,** | ) |
| **208 South LaSalle St.** | ) |
| **Suite 814** | ) |
| **Chicago, IL 60604,** | ) |
|  | ) |
| **Defendant.** | ) |

_____ )

**COMPLAINT FOR EQUITABLE AND MONETARY
RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Janet Lynn Billings files her Complaint against Defendant B&B Electronics
Manufacturing Company ("B&B Electronics") for violations of the Americans with Disabilities
Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29
U.S.C. § 2601, *et seq.*, and violations of the Illinois Human Rights Act, 775 ILCS 5/1 .

**Parties**

1.      Plaintiff Janet Lynn Billings is a resident of LaSalle County, Illinois, and is a
former employee of Defendant B&B Electronics Manufacturing Company.  Plaintiff is a
"person" and "employee" as defined by the ADA, the FMLA, and the Illinois Human Rights Act.

2.      Defendant B&B Electronics Manufacturing Company is incorporated in Delaware

has its principal place of business is located at its headquarters in Ottawa, Illinois. B&B operates

a manufacturing facility at its headquarters in Ottawa, Illinois and employed Billings at that

facility. Defendant is an "employer" as defined by the ADA, the FMLA, and the Illinois Human

Rights Act.

## Jurisdiction and Venue

3.      This Court has jurisdiction over the subject matter of this complaint pursuant to

28 U.S.C. § 1331, because this is an action arising under the laws of United States, specifically,

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Family and

Medical Leave Act ("FMLA"), 29 U.S.C. § 2601

4.       This Court has supplemental jurisdiction over the claims of violations of the

Illinois Human Rights Act, 775 ILCS 5/1 pursuant to 28 U.S.C. § 1367, because the claims are

so related to claims within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution

5.      Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §

1391 because the acts that form the basis of this complaint occurred in this District and this

Division.

## Factual Allegations

6.      B&B Electronics hired Billings as an intern in or about 1997, and on or about

June 15, 1998, B&B Electronics hired Billings as a full time employee.

7.      Billings worked for B&B Electronics from in or about 1998 until on or about

November 1, 2012, when B&B Electronics terminated Billings' employment.

8.      At the time of Billings' termination, Billings was an Engineering Technician in

the System Test Department, where Billings supported B&B Electronics' work on the new Ford

-2-

Eco Boost Turbo Engines implementing the new European Streamer line & The New Ethernet Serial Server Line.

9.      In or about 2001, Billings was diagnosed with breast cancer, and following this initial diagnosis Billings went through several surgeries and multiple rounds of chemotherapy.

10.      During this time, B&B Electronics was responsive to Billings' needs and allowed Billings to use flex-time and intermittent FMLA leave for her treatments.

11.      In or about 2006, Billing's cancer spread and she was diagnosed as terminal. Presently Billings has a 5-6 year life expectancy and expects to be able to work for 3-5 more years.

12.      In response to Billings' cancer diagnosis and prognosis, B&B Electronics Billings met with its then president, Don Wiencek, various HR representatives, and her former manager, Kevin Nelson, to discuss her symptoms and needs.

13.      Thereafter B&B Electronics generally accommodated Billings by assigning her with shorter projects so that if she needed to take unexpected time off, it would not affect B&B Electronics' business.

14.      In or about 2010, side effects from chemotherapy made it difficult for Billings to lift heavy objects and limited Billings' ability to transition between extreme temperatures.

15.      On or about December 15, 2010, Nelson performed Billings' annual performance evaluation.

16.      Billings' evaluation was ranked on scale of Outstanding, Exceeds Expectations, Meets Expectations, Below Expectations, and Does Not Meet Expectation.  Nelson rated Billings as follows:

i.   Job Knowledge:  Meets Expectations
ii.   Leadership/Judgment:  Meets Expectations
iii.   Reliability; Commitment to Job:  Exceeds Expectations
iv.   Quality of Work:  Meets Expectations
v.   Customer Service:  Exceeds Expectations
vi.   Interpersonal Skills:  Meets Expectations
vii.   Teamwork/Cooperation:  Meets Expectations

17.     In the winter of 2010 B&B Electronics required Billings to spend significant time outdoors gathering test data and visiting customer sites.  During this time, there were days of heavy snow when Billings was forced to spend upwards of eighty percent of her time outdoors.

18.     Billings co-workers, including new supervisor, Lori Boddy, were aware of Billings' cancer diagnosis and that Billings needed to take frequent breaks because of her medical condition.  However, when Billings came inside to warm up and dry off from the snow, Boddy chastised Billings and told her that she could take a break as long as she could meet her deadlines.

19.     Around that same time, Billings received a round of pill-based chemotherapy and had difficulty breathing and difficulty holding conversations, yet Boddy continued to push Billings to go outside and work to meet her deadlines.

20.     In or about mid-May 2011 Boddy completed an informal evaluation of Billings that was more critical of Billings' work than Nelson's past evaluations.

21.     Thereafter Boddy became more critical of Billings and excluded Billings from company activities.  For example, on or about April 20, 2012, Boddy emailed the Telematics team to acknowledge their recent hard work and took the team out for lunch as a reward. However, Boddy did not include Billings in the luncheon. In addition training was scheduled after normal work hours for Billings to exclude her from the training.

22.     In or about early-2012, B&B Electronics told Billings that she could no longer use flex-time for doctors' appointments related to her cancer treatment.  In response Billings discussed her need for this accommodation during one-on-one meetings with Boddy, and she reported to Boddy that it was not fair that other Engineering Technicians had more flexibility.

23.     In an email on June 11, 2012, Billings also brought up the issue of flex-time accommodation with B&B Electronics' Human Resources Director, Rich Czekanski; however, B&B Electronics continued to tell Billings that she could no longer use flex-time for doctors' appointments related to her cancer treatment.

24.     On or about September 12, 2012, B&B Electronics issued a new employee handbook which mandated that employees may no longer rollover vacation annually except "in extreme cases and in the event that business needs require that the employee not use their full vacation, hours may be rolled over with approval of the employee's supervisor and the department head."

25.     On or about September. 13, 2012, Billings spoke with Boddy about securing an exception to the vacation rollover policy, as Billings had already planned and paid for a vacation in early January 2013 that would use rollover days.

26.     Billings emailed Boddy and Czekanski about her request, and Czekanski replied and denied Billings' request.  In response Billings emailed B&B Electronics President Sean Harrigan and requested an accommodation for this leave as a terminal cancer patient.

27.     In or about October 2012 Billings worked with B&B Electronics human resources representative Barbara Haage to renew the previously granted intermittent FMLA leave accommodation.  However, Haage told Billings that she lost Billings' paperwork when Billings attempted to learn the status of her accommodation and leave request.

28.     Thereafter B&B Electronics did not respond to Billings FMLA request before it terminated her employment on or about November 1, 2012, without notice, citing a restructuring of the business and elimination of her position.

29.     On or about that same week, B&B Electronics hired a replacement for Billings' former position.

30.     Billings has administratively exhausted the claims set forth in the Complaint.

## COUNT I
### Discrimination
**Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.***

157.    Billings hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

158.    Billings is a "person" and an "employee," and Defendant B&B Electronics is an "employer" and a "covered entity" as those terms are defined at 42 U.S.C. § 12111.

159.    Because all the actions complained of took place after January 1, 2009, the definition of disability in this case is governed by the ADA Amendments Act of 2008. 42 U.S.C. § 12102(4)(A).

160.    Billings has an "actual disability" as defined at 42 U.S.C. § 12102(1)(A) in that at all relevant time she had physical impairments that substantially limited one or more of her major life activities.

161.    Prior to Billings' termination, B&B Electronics was aware of Billings' cancer and resulting limitations.

162.    At the time of Billings discharge, she was performing her job at a level that met her employer's legitimate expectations.

-6-

163.   B&B Electronics terminated Billings' employment after its President learned of Billings' terminal cancer, and hired someone to "replace" her position after her termination.

164.   Pursuant to 42 U.S.C. § 12112(a), it is unlawful for a covered entity to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees."  It is also unlawful to deny employment opportunities to an otherwise qualified individual with a disability, if such denial is based on the need for a reasonable accommodation.  42 U.S.C. § 12112(b)(5)(B).

165.   Billings has been damaged as a result of B&B Electronics unlawful acts.

**COUNT II**
**Retaliation**
**Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.***

157.   Billings hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

158.   Billings is a "person" and an "employee," and Defendant B&B Electronics is an "employer" and a "covered entity" as those terms are defined at 42 U.S.C. § 12111.

159.   Because all the actions complained of took place after January 1, 2009, the definition of disability in this case is governed by the ADA Amendments Act of 2008. 42 U.S.C. § 12102(4)(A).

160.   Billings has an "actual disability" as defined at 42 U.S.C. § 12102(1)(A) in that at all relevant time she had physical impairments that substantially limited one or more of her major life activities.

161.   Prior to Billings' termination, B&B Electronics was aware of Billings' cancer and resulting limitations.

162.    At the time of Billings discharge, she was performing her job at a level that met her employer's legitimate expectations.

163.    B&B Electronics terminated Billings' employment after its President learned of Billings' terminal cancer, and hired someone to "replace" her position after her termination.

164.    Pursuant to 42 U.S.C. § 12112(a), it is unlawful for a covered entity to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees."  It is also unlawful to deny employment opportunities to an otherwise qualified individual with a disability, if such denial is based on the need for a reasonable accommodation.  42 U.S.C. § 12112(b)(5)(B).

165.    Billings has been damaged as a result of B&B Electronics unlawful acts.

**COUNT III**
**Failure to Accommodate**
**Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.**

166.    Billings hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

167.    Billings is a "person" and an "employee," and Defendant B&B Electronics is an "employer" and a "covered entity" as those terms are defined at 42 U.S.C. § 12111.

168.    Billings has an "actual disability" as that term is defined at 42 U.S.C. § 12102(1)(A), for the reasons set forth above.

169.    During the period beginning when Billings suffered from cancer and the related side effects of chemotherapy, Billings was and remains qualified and able to perform her duties for B&B Electronics with the reasonable accommodations of a flex-time schedule, additional breaks, and decreased lifting, or some combination of the above.

170.     Billings requested the reasonable accommodation of working a flex-time schedule.

171.     B&B Electronics failed to grant Billings' reasonable accommodation request to work a flex-time schedule or engage in an interactive process and failed to suggest any other reasonable accommodation prior to terminating Billings' employment.

172.     Billings has been damaged as a result of B&B Electronics' unlawful actions.

## COUNT IV
## Retaliation
## Family and Medical Leave Act, 19 U.S.C. § 2601, *et seq.*

173.     Billings hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

174.     As set forth in and permitted under Fed. R. Civ. P. 8(e), Plaintiff hereby pleads this count in the alternative.

175.     At all relevant times to this complaint, B&B Electronics was an "employer" as defined by the FMLA.

176.     At all relevant times to this complaint, Billings was an "eligible employee" as defined by the FMLA.

177.     During the course of her employment with B&B Electronics, Billings exercised her rights under the FMLA when she requested FMLA leave due her undergo cancer and related treatments.

178.     B&B Electronics knew that Billings had requested FMLA leave, and it retaliated against Billings by firing her, in whole or in part, because she exercised her rights under the FMLA.

179.     Billings has been damaged as a result of B&B Electronics' unlawful actions

**COUNT V**
**Discrimination and Retaliation**
**The Illinois Human Rights Act, 775 ILCS 5/1**

180.     Billings hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

181.     As set forth in and permitted under Fed. R. Civ. P. 8(e), Plaintiff hereby pleads this count in the alternative.

182.     The Illinois Human Rights Act prohibits discrimination on the basis of disability.

183.     Billings has a disability According to 775 ILCS 5/1-103 because her disability is a "determinable physical or mental characteristic of a person, including, but not limited to, a determinable physical characteristic which necessitates the person's use of a guide, hearing or support dog, the history of such characteristic, or the perception of such characteristic by the person complained against, which may result from disease, injury, congenital condition of birth or functional disorder"

184.     B&B Electronics' termination of Billings constitutes an adverse action against Billings and was taken against Billings due to her cancer.

185.     Billings Handicap does not limit her ability to perform the functions of her job.

186.     Billings has been damaged as a result of B&B Electronics' unlawful actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Janet Billings prays this Honorable Court for the following relief Judgment against Defendant B B&B Electronics Manufacturing Company in the amount of economic damages, compensatory damages, and punitive damages to be determined at trial, plus attorneys' fees, costs of this action, and any other relief this Honorable Court deems just and proper to award.

-10-

## **Demand for Jury Trial**

Plaintiff demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,


_/s/ R. Scott Oswald_____
R. Scott Oswald, Esq.
*Counsel for the Plaintiff*
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com