**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANET LYNN BILLINGS, | ) | |
| | ) | Case No.  13-CV-3576 |
| Plaintiff, | ) | Honorable Judge Matthew F. Kennelly |
| v. | ) | |
| | ) | |
| B & B ELECTRONICS MANUFACTURING | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................................1

STATEMENT OF THE FACTS ...............................................................................................1

STANDARD OF REVIEW ........................................................................................................5

ARGUMENT ..............................................................................................................................5

    I.    Defendant's Motion Fails Because The Parties Dispute Genuine Issues of Material Facts and Because Plaintiff Establishes The Elements of a Prima Facie Case of Discrimination Under The ADA and IHRA…………………………………………..5

        A.  Plaintiff proves ADA discrimination under the direct method…………………...6

        B.  Plaintiff proves ADA and IHRA discrimination under the indirect method…….10

    II.    Defendant's Motion Fails Because The Parties Dispute Genuine Issues Of Material Facts And Because Plaintiff Establishes The Elements Of A Prima Facie Case Of Retaliation Under The ADA, FMLA, And IHRA………………………………...…12

        A.  Plaintiff directly proves ADA, FMLA, and IHRA retaliation…………………...12

        B.  Plaintiff proves ADA, FMLA, and IHRA retaliation under the indirect method……………………………………………………………………...……14

    III.    Defendant's Motion Fails Because The Parties Dispute Genuine Issues Of Material Facts And Because Plaintiff Establishes The Prima Facie Elements Of A Claim Of Failure To Accommodate Under The ADA………………………………………....15

CONCLUSION…………………………………………………………………………..17

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)…………………………………………………5

*Board of Trustees v. Sweeney,* 439 U.S. 24 (1978)……………………………………………..11, 14

*Bixby v. JP Morgan Chase Bank, N.A.*, 2012 WL 832889 (N.D. Ill. March 8, 2012)…………5

*Buie v. Quad/Graphics, Inc.,* 366 F.3d 496 (7th Cir. 2004)………………………………..6, 12

*Burnell v. Gates Rubber Co.*, 647 F.3d 704 (7th Cir. 2011)………………………………………7

*Christie v. Foremost Ins. Co.*, 785 F.2d 584 (7th Cir. 1986)……………………………………...8

*Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595 (7th Cir. 2011)…6, 7, 11

*Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582 (7th Cir.2011)………………………………..7

*EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789 (7th Cir.2005)………………………………..16

*Fink v. Kitzman*, 881 F. Supp. 1347 (N.D. Iowa 1995)…………………………………….8, 9, 10

*Garza v. Abbott Labs.,* 940 F.Supp. 1227 (N.D.Ill.1996)…………………………………………5

*Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674 (7th

    Cir. 2010)………………………………………………………………………...16

*Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)…………………………………12

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)…………………………………………12

*Henley v. U.S. Steel Corp.*, 2005 WL 1384642 (N.D. Ind. June 7, 2005)………………….....6

*Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363 (8th Cir. 1987) *abrogated by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)……………………………………………………...8

*Jones v. Oklahoma City Public Schools*, 617 F.3d 1273 (10th Cir. 2010)………………………12

*Lloyd v. Swifty Transp., Inc.,* 552 F.3d 594 (7th Cir.2009)………………………………...11

*Mannie v. Potter*, 394 F.3d 977 (7th Cir. 2005)………………………………………….....14

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976)…………………………………12

*McDonnell Douglas Corp. v. Green*, 411 U.S.792 (1973)……………………………………..11, 14

*Metzger v. Illinois State Police*, 519 F.3d 677 (7th Cir. 2008)…………………………………..13

*Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382 (7th Cir. 2010)……………………………….7

Nolting v. Yellow Freight Sys., Inc., 799 F.2d 1192 (8th Cir. 1986)…………………………..8

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)…………………………………………..12

*Robin v. Espo Eng'g Corp.,* 200 F.3d 1081 (7th Cir.2000)…………………………………….6

*Talanda v. KFC Nat. Mgmt. Co.*, 140 F.3d 1090, (7th Cir. 1998)………………………......12

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (U.S.1981)…………………………...11, 14

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013)………………………………..12

*Wooten v. Acme Steel Co.,* 986 F. Supp. 524 (N.D. Ill. 1997)…………………………………….5

*Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172 (1989)………………………….5, 12

## STATUTES

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* …………………1

Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. ……………..…………1

Illinois Human Rights Act, 775 ILCS 5/1……………………………………………......1

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ……………………………………………………………………...5

## **Introduction and Summary of the Argument**

Plaintiff Janet Billings asserts five causes of action against Defendant B&B Electronics

Manufacturing Company ("B&B"), in her First Amended Civil Complaint. Specifically,

Billings asserts: (1) discrimination, under the Americans with Disabilities Act of 1990 ("ADA"),

42 U.S.C. § 12101, *et seq.*; (2) retaliation under the ADA, (3) failure to accommodate under the

ADA; (4) retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et*

*seq.*; and (5) discrimination and retaliation under the Illinois Human Rights Act, 775 ILCS 5/1.

Defendant B&B asks the Court in its May 14, 2014 Motion for Summary Judgment to dismiss all

five cause of action, and based on the evidence and arguments set forth below, Plaintiff Billings

submits that Defendant B&B's argument should be rejected and its motion denied in its entirety.

## **Statement of the Facts**

Billings joined B&B as a full-time engineering technician in 1998 and remained in the

same position until B&B terminated her on November 1, 2012, as part of a reduction in force.

DSF 6, 48.[1] Specifically, Billings was the engineering technician for the system verification

group. DSF 6. Billings was diagnosed with cancer in 2003 and in 2008 she received a terminal

diagnosis. DSF 66, 77. Billings informed B&B of her initial diagnosis in 2003. DSF 77.

Thereafter, Billings provided B&B medical documents relating to her cancer diagnosis, but

B&B did not always accept Billings' medical documents, claiming they were not necessary.

DISPUTED-DSF 63, 66.[2] In 2008, Billings submitted medical documents to B&B which

explained that Billings' health was in decline and that she would need accommodations moving

forward and did not need to submit any supporting documentation. *Id.* Billings visibly displayed

a "MoneyBucket List Bank" on her desk at work so her coworkers could make contributions

---

[1] Citations to Defendant's undisputed facts are noted by "DSF x."
[2] Citations to Plaintiff's Diputation of Defendant's facts are noted by "DISPUTED-DSF x."

towards her bucket list items. *Id.* Some of the items on Billings' bucket list were visibly displayed on the "Money Bucket List Bank." *Id.*

Sean Harrigan, President and CEO of B&B hired Paul Harrington in April 2011 as the head of B&B's engineering department. DSF 11-12. Harrigan tasked Harrington with doubling B&B's revenue within a two-year timeframe, but did not give Harrington specific instructions on how to achieve that goal. DISPUTED-DSF 13. Harrington believed that he had to make changes to the engineering department. *Id*. One of Harrignton's changes to increase revenue was to shift B&B from focusing on hardware products to software products. DSF 18. Paul Harrington learned of Billings' cancer diagnosis in the first half of 2012. DISPUTED-DSF 78.

Harrington hired Lori Boddy as the manager of B&B's system test group. DSF 20-21. Boddy conducted several one-on-one coaching sessions and other trainings with Billings. DSF 21. As B&B shifted its focus away from hardware development, the work available for a technician within the system test group decreased. DSF 22.

Harrington conducted B&B's reduction in force in the first half of 2012. DISPUTED-DSF 23. However, Harrington did not contemporaneously document who would be included in the reduction in force. *Id.* B&B did not give Harrington any protocols to employ to ensure a fair and effective reduction in force. DISPUTED-DSF 29. Harrington based the reduction in force on factors that were "in [his] head, based on the business plan that [B&B] had moving forward." DISPUTED-DSF 23, 29. Harrington was focused on what was "important going forward" for the "future" of B&B. DISPUTED-DSF 23.

Harrington did not document his rankings and evaluation process of the individuals he considered for the reduction in force. DISPUTED-DSF 29. Further, he never documented why he made the decision to eliminate the system test technician position. *Id.* Additionally,

Harrington did not use any objective criteria in preparing a ranking of B&B's employees. DISPUTED-DSF 39. Harrington ranked B&B's employees based on their skillset and what skills each individual would contribute to B&B's future. *Id*. However, Harrington did not base his ranking and evaluation of B&B's employees' skillsets on any documentation. *Id*. Rather, Harrington's reasoning "was all in [his] head," as he focused on how each individual could contribute to B&B's future. *Id*. Harrington never shared his reasons for his inclusion of each individual he selected to be part of the reduction in force and he was the sole decision maker in the decision to terminate Billings. DISPUTED-DSF 29. Harrigan concurred with Harrington's decision to terminate Billings only because he was Harrington's boss and had to approve Harrington's decision. DISPUTED-DSF 44.

Harrington wanted to eliminate the system test technician position because he believed it was unnecessary. DSF 22. However, he only eliminated  one of B&B's two system test technician positions: Billings' position. DISPUTED-DSF 41, 52. Harrington did not terminate Julius Saroka, B&B's other system test technician. *Id.*

In anticipation of her upcoming 2012 FMLA leave, Billings asked Barbara Haage if Haage needed anything for Billings' upcoming leave. DISPUTED-DSF 55. Billings met with Haage to ensure her paperwork was complete and discovered that Haage was missing half of Billings' personnel folder. *Id.* Billings requested new FMLA paperwork so that she could ask her doctor to complete the required paperwork at an upcoming appointment. *Id.* B&B terminated Billings before she could return her 2012 FMLA paperwork. *Id.*

In Fall 2010, Billings returned to B&B from hernia surgery and requested a small gas can so that she would be able to lift the gas can to perform her job duties. DISPUTED-DSF 58.

However, B&B did not accommodate Billings' request and Billings had to purchase her own lighter gas can so that she could perform her job duties. *Id*.

From 2009 to 2011, following her TRAM flap surgery, Billings requested a chair from B&B that would accommodate her needs after surgery. DISPUTED-DSF 60. However, B&B did not accommodate Billings and instead Billings was told to look around the office for a chair. *Id*. Billings found a chair in B&B's library, however the chair was unstable and it ripped the tube from the wound vac attached to Billings' body. *Id*. As a result, Billings renewed her request for a chair, but B&B did not accommodate Billings' request. *Id*. In total, Billings request a chair fifteen times, but B&B never provided Billings a chair. DISPUTED-DSF 60-61.

As an hourly employee, Billings was entitled two, ten-minute breaks, but Boddy criticized Billings for taking breaks she was entitled to. DISPUTED-DSF 65. In February 2012, B&B ended its Comp Time policy and required that hourly employees make up missed hours in the same week. DSF 68. Billings requested a meeting with Harrigan to explain her need for flex time to attend medical appointments. DISPUTED-DSF 71. Additionally, Czekanski was aware that Billings was concerned that she would not be able to take home a full paycheck if she was unable to make up lost hours due to medical appointments in the same week. DISPUTED-DSF 71.

Additionally, on September 12, 2012 Czekanski informed B&B's employees of the change in company policy that would no longer allow employees to rollover vacation from one year to another. DISPUTED-DSF 73. On September 14, 2013, Billings sent an email to Harrigan, requesting that he grant her an exception to B&B's new rollover policy. *Id*. Billings wrote, "Bucket List Trips and Vacation Time for Terminal Cancer Patient who continues to not miss work should be considered 'Extreme' or an Exception." *Id*. Harrigan forwarded Billings'

September 14, 2012 email to Czekanski and Boddy. *Id.* Harrigan understood Billings' email to be a request for an accommodation. DISPUTED-DSF 75.

### Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is said to exist if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making the determination on summary judgment all reasonable inferences from the evidence must be drawn in favor of the nonmoving party, and the facts must be viewed in the light most favorable to him. *Id.* at 252-55.

### Argument

I. **Defendant's Motion Fails Because The Parties Dispute Genuine Issues Of Material Facts And Because Plaintiff Establishes The Elements Of A *Prima Facie* Case Of Discrimination Under The ADA and IHRA**[3]

To establish a *prima facie* case under the ADA and the IHRA, a plaintiff employee needs to establish: "(1) [the employee] is a disabled person within the meaning of the ADA; (2) [the employee] is qualified, that is, with or without reasonable accommodation (which [he] must describe), [he] is able to perform the essential functions of the job; and (3) [the employee] suffered an adverse employment action because of [his] disability." *Wooten v. Acme Steel Co.,* 986 F. Supp. 524, 528 (N.D. Ill. 1997) (citing *Garza v. Abbott Labs.,* 940 F.Supp. 1227, 1235 (N.D.Ill.1996) (internal quotations and citations omitted)). A disabled plaintiff employee can

---

[3] The elements of a claim of discrimination under IHRA mirror those of a claim of discrimination under the ADA. *See Bixby v. JP Morgan Chase Bank, N.A.*, 2012 WL 832889, at *14 (N.D. Ill. March 8, 2012) (citing *Zadereka v. Ill. Human Rights Comm'n*, 131 Ill. 2d 172, 178–79 (Ill. 1989).

prove discrimination under the ADA through direct and indirect evidence. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citing *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir.2000)).

The ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. §12102(2) (2000). Cancer is a disease that causes physical or mental impairment under the ADA. *Henley v. U.S. Steel Corp.*, 2005 WL 1384642 (N.D. Ind. June 7, 2005).

Billings was diagnosed with cancer in 2003, and in 2008 she received a terminal diagnosis. DSF 66, 77. As such Billings has a disability as it relates to her claims against Defendant (Defendant does not question that Billings has a disability under the ADA or the IHRA). Defendant also does not dispute that Plaintiff was qualified to perform her job responsibilities. Plaintiff suffered an adverse employment action when Defendant terminated her employment on November 1, 2012, as part of a Reduction in Force (RIF), and she can prove causation directly and indirectly. As such, Plaintiff establishes the *prima facie* elements of her case of discrimination under the ADA and the IHRA.

**A. Plaintiff proves ADA discrimination under the direct method**

To prove discrimination directly, a disabled plaintiff can present direct or circumstantial evidence. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Circumstantial evidence is the type of evidence that "allows a jury to infer intentional discrimination by the decision-maker." *Id*. Several types of circumstantial evidence can survive summary judgment:

"(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson*, 657 F.3d at 601 (citing *Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582, 586–87 (7th Cir.2011); *Burnell v. Gates Rubber Co.,* 647 F.3d 704, 708 (7th Cir.2011)).

Billings directly proves discrimination by showing that similarly situated employees outside of her protected class were not terminated in the RIF that claimed her job. In explaining B&B's justification for its reduction in force, Harrington testified that B&B was transitioning its focus from hardware to software, and in that process, B&B was terminating its technicians and keeping its engineers. DSF 18. Harrington testified that he had to reduce headcount to cut costs and as such, he decided to terminate B&B's technicians. *Id.* However, he only singled out the system verification technician position, and even then he focused specifically on Billings, who did not hold B&B's only system verification technician position. In fact, B&B retained Julius Saroka, B&B's other system test technician. DISPUTED-DSF 41. Additionally, B&B retained technicians Jeff Joray, Doug Anderson, and Bill Matthew, technicians outside Billings's test verification group. DISPUTED-DSF 52.

Moreover, to show pretext, a plaintiff must demonstrate that: "(1) the employer's non-discriminatory reason was dishonest and (2) the employer's true reason was based on discriminatory intent." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 396 (7th Cir. 2010). Billings proves discrimination under the direct method by showing that B&B's reasons for terminating Plaintiff's employment are pretextual.

7

Harrington conducted the RIF with no objective criteria and did not document his decision making process contemporaneously. DISPUTED-DSF 29, 39, 44. Harrington claims to have made his decision to RIF employees based on the skillset those individuals could contribute to B&B's future, yet he did not base his ranking and evaluation of the individuals' skillsets on any documentation. DISPUTED-DSF 39. Moreover, Harrington did not employ any objective criteria when ranking B&B's employees. *Id.* Harrington repeatedly testified that looking back at his decision making process behind B&B's RIF, there are no documents to provide any insight into the process. DISPUTED-DSF 29. Further, Harrington did not have instructions from Harrigan, President of B&B, or B&B's board of directors, or anyone else at B&B on how to conduct the RIF in a fair and effective manner. DISPUTED-DSF 29. Harrington failed to employ any fixed protocols or documented criteria in order to identify the individuals to be impacted by the RIF, and hence a jury can reasonably infer that B&B was not engaging in a legitimate reduction in force as it related to Billing and instead used the RIF as a pretext to cover discrimination against Billings. *Christie v. Foremost Ins. Co.*, 785 F.2d 584, 586-87 (7th Cir. 1986) (holding the legitimacy of RIF is for the jury where supervisor conducted alleged RIF but was not made aware of employer's company policy governing RIFs).[4]

---

[4] In situations where the existence of a RIF is disputed by the plaintiff, the defendant is required to provide proof that the reduction in force was legitimate and necessary. *See Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363, 367 (8th Cir. 1987), *abrogated by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). It generally does so by producing an actual plan to reduce corporate expenditures by eliminating jobs. *Id.* "These plans generally include objective criteria by which to determine which jobs will be eliminated and often include objective evidence of a business decline." *Id.* (*citing Nolting v. Yellow Freight Sys., Inc.*, 799 F.2d 1192, 1194 (8th Cir. 1986) (disparate impact ADEA case involving nationwide reduction in force).Use of objective criteria in a RIF is an important safeguard to insulate employees from the possible biases or prejudices of supervisors. *Hillebrand,* 827 F.2d at 368. *See Christie*, 758 F.2d at 586 (jury could reject employer's claim of a RIF because the criteria for deciding which employee to retain was subjective and made by the manager who was alleged to discriminate on the basis of age). In *Fink v. Kitzman*, the employer not only retained employees with a shorter period of

Harrington's only claimed guideline for the RIF was that "the business has to – is gonna grow. You know, this has to grow, and our future is in the – you know." DISPUTED-DSF 29. Harrington was aware of Plaintiff's cancer, but with his acknowledged focus on the **future** of the company and the role each employee would play in it, it is undeniable that Plaintiff's anticipated role in B&B's future growth was limited due to her terminal cancer:

> 64:10 Q.   And is there a -- a list anywhere of what
> 64:11 those skill sets are, such that someone looking in
> 64:12 retrospect at this might know what the factors were, in
> 64:13 -- in terms of how these individuals were ranked in
> 64:14 this order?
> 64:15     MS. KAPUR: Objection. Form. Vague and
> 64:16 ambiguous.
> 64:17   A.   No. It was -- like I say, **it was all in my**
> 64:18 **-- my head, based on the business plan that we had**
> 64:19 **going forward**. So it -- it was mentioned earlier,
> 64:20 never got really detailed in directions or instructions
> 64:21 from -- from Sean Harrigan or the board of directors,
> 64:22 but like in this case, it's the same thing, is the
> 64:23 business has to -- is gonna grow. You know, this has
> 64:24 to grow, and our future is in the -- you know, we've
> 64:25 made these acquisitions. These -- we made three
> 65:1 acquisitions on three specific technologies, Wifi
> 65:2 technology, cellular technology, and fiber and ethernet
> 65:3 technology. And so, I was making this list in the
> 65:4 context of I knew that those three technologies were
> 65:5 important going forward, and then as it divides out by
> 65:6 functional discipline, **I know that my software group**
> 65:7 **and my system test group are the -- very important to**
> 65:8 **that -- that future**.

Exhibit 3, Excerpts of Harrington's Deposition at 64:10-65:8 (emphasis added).

Moreover, B&B did not terminate similarly situated employees with less tenure than Billings and has no records of the criteria it used to orchestrate its RIF other than Harrington's

---

service and less experience than the plaintiff, it also decided to terminate her in an angry reaction to her conduct. *Fink v. Kitzman*, 881 F. Supp. 1347, 1366 (N.D. Iowa 1995). The Court held that the employer's method of determining which employees to discharge as part of a RIF provided evidence of discriminatory intent. Id. at 1365.

recitation of what went on in his head, such that B&B was terminating Billings' position alone. The only updisputed facts here are that B&B was terminating employees based on its future needs and B&B was aware that Billings has terminal cancer. The confluence of these facts creates fact questions surrounding the legitimacy of the reduction in force and B&B's discriminatory intent for terminating Bililngs that are for the jury to decide. Because B&B lacked objective criteria in planning in RIF, Billings' disability was a factor in her termination. *Fink*, 881 F. Supp. At 1364 ("absence of objective criteria to determine which jobs to eliminate and objective evidence of a business decline was sufficient evidene to make the additional showing that race had been a factor in the plaintiff's termination."). It is undisputed that Harrington made the decision to terminate Billings. DISPUTED-DSF 29. Further, no one at B&B questioned Harrington on his reasoning to terminate Billings and Harrington never shared his reasoning with anyone. DISPUTED-DSF 29, 44. Harringan concurred with Harrington's recommendation, not because Harrington shared the steps that led him to his decision to terminate Billings with Harrigan, but because Harrigan was Harrington's supervisor and had to approve Harrington's decision. DISPUTED-DSF 44. Harrigan never asked Harrington to for documents supporting Harrington's decision to terminate Billings. *Id.*

As such, Plaintiff proves elements of her *prima facie* discrimination case under the ADA and the IHRA under the direct method by showing that B&B treated other similarly situated individuals more favorably than Billings, and B&B's reasons for terminating her are pretextual.

**B. Plaintiff proves ADA and IHRA discrimination under the indirect method**

For a disabled plaintiff to prove discrimination under the indirect method, he must show that: "(1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly

10

situated employees without a disability were treated more favorably." *Dickerson,* 657 F.3d at 601

(citing *Lloyd v. Swifty Transp., Inc.,* 552 F.3d 594, 601 (7th Cir.2009)).

In the absence of direct evidence, after a plaintiff establishes the *prima facie* elements of

his claim, the "pretext" analysis that developed out of *McDonnell Douglas Corp. v. Green*, 411

U.S.792 (1973), and its progeny is applicable. Upon a plaintiff's making out a *prima facie* case

of discrimination, the burden shifts to the defendant to "'articulate some legitimate,

nondiscriminatory reason for the employee's rejection'" *Id*. (citing *McDonnell Douglas Corp.,*

411 U.S. 792, 802 (1973)). In fact, "[t]he defendant need not persuade the court that it was

actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S.

248, 254 (U.S.1981) (citing *Board of Trustees v. Sweeney,* 439 U.S. 24, 25 (1978)). After a

defendant articulates a legitimate, nondiscriminatory basis for its discharge of its employee, the

plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the

defendant are not true, but instead act as mere pretext for the discrimination. *Dickerson*, 657 F.3d

at 601

Billings maintains that B&B's pretextual reasons for terminating her employment, as a

set forth, *supra*, in Section I. A. at pp. 3-7, allow her to prove discrimination under the direct

method. However, in the event that the Court disagrees that the evidence set forth, *supra*, in

Section I. A. is direct evidence, Billings submits that this evidence also demonstrates pretext

under the indirect method. Billings indirectly proves discrimination under the ADA because

B&B only fired Billings and maintained similarly situated employees who did not have terminal

cancer and thus would be there for Defendant in the future.

**II. Defendant's Motion Fails Because The Parties Dispute Genuine Issues Of Material Facts And Because Plaintiff Establishes The Elements Of A *Prima Facie* Case Of Retaliation Under The ADA, FMLA, And IHRA[5]**

To establish a *prima facie* retaliation case under the ADA, FMLA, and IHRA, a plaintiff needs to prove that: "(1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action." *See Talanda*, 140 F.3d at 1095. Following the Title VII framework, a plaintiff is not required to demonstrate that retaliation was the sole factor in the employment decision, but rather a plaintiff must demonstrate that his protected activity was simply a factor that made a difference in the employment decision. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013); *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1277 (10th Cir. 2010). When Title VII was enacted, Congress considered and rejected an amendment that would have placed the word "solely" before "because of [the complainant's] race, color, religion, sex, or national origin." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 n. 7 (1989). "But-for" causation is not the same as "sole" causation. *See McDonald v. Santa Fe Trail Transp. Co*., 427 U.S. 273, 282 n. 10 (1976). "But for" causation only requires that protected conduct "play a role" in the employer's decision making process and have a "determinative influence on the outcome." *Gross v. FBL Financial Services, Inc*., 557 U.S. 167, 176 (2009) (*citing Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

**A. Plaintiff directly proves ADA, FMLA, and IHRA retaliation**

To establish retaliation under the direct method, a plaintiff can use direct evidence or probative circumstantial evidence "that the *decisionmaker* has acted for a prohibited reason."

---

[5] The standard federal courts apply to Title VII retaliation claims also applies to retaliation claims under ADA, FMLA, and IHRA. *Talanda v. KFC Nat. Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (ADA); *Buie,* 366 F.3d at 503 (FMLA); *Zaderaka*, 131 Ill. 2d at 178-79 (IHRA).

*Metzger v. Illinois State Police*, 519 F.3d 677, 682 (7th Cir. 2008) (emphasis in original). After B&B unveiled its new vacation roll-over policy, prohibiting its employees from rolling over vacation from one year to another, Billings sent several emails to Boddy, Czekanski, and Harrigan, on January 13 and 14, 2012, requesting an exception to B&B's new policy. DISPUTED-DSF 73, 75. Specifically, on September 14, 2012, Billings wrote to Harrigan, "Bucket List Trips and Vacation Time for Terminal Cancer Patient who continues to not miss work should be considered 'Extreme' or an Exception." *Id.* Billings very specifically requested an exception, and Harrigan testified that he found Billings's requests to be an unreasonable request for an accommodation but nevertheless he understood her email to be a request for an accommodation. DISPUTED-DSF 75.

Additionally, B&B denied Billings's request to use flex-time to attend medical appointments. Boddy was aware of Billings's medical appointments because Billings shared her monthly calendar with Boddy, which included work deadlines and any upcoming medical appointments. DISPUTED-DSF 70. Despite her knowledge of when Billings had medical appointments, Boddy changed Billings's work-related appointments to interfere with Billings's medical appointments. *Id.* In February 2012, B&B changed its Company policy to remove flex-time, and after that required that employees make up missed time in the same work week. DSF 68. While on the surface B&B claims that Billings was free to attend medical appointments during the week and then inform her supervisor of her absence, B&B's change in policy to make up lost time in the same week did not allow Billings to make up the lost time. DISPUTED-DSF 71. Billings notified B&B that she needed flex-time to attend her appointments. In fact, Czekanski testified that Billings was concerned about making up lost time in the same week and if she was not able to do so, she would not have a whole paycheck at the end of the week. *Id.*

13

In anticipation of her 2012 FMLA leave, on October 23, 2012, Billings asked Haage whether Billings's paperwork was complete. DISPUTED-DSF 55. Billings discovered that Haage was missing Billings's medical documents and Billings had to ask her doctor for the required FMLA paperwork. *Id.* However, B&B terminated Billings on November 1, 2012, seven days after she requested FMLA paperwork, and before she could return her 2012 FMLA paperwork. *Id.* Defendant argues that Billings's position was selected for elimination in June 2012, months before Billings requested FMLA paperwork in October 2012. Defendant's Memorandum at 1232-33. However, it is undisputed that Billings took intermittent FMLA leave from 2008 to 2011. DSF 54.

**B. Plaintiff proves ADA, FMLA, and IHRA retaliation under the indirect method**

Under the indirect method, upon a plaintiff's making out a *prima facie* case of discrimination, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the employee's rejection'" *Id.* (citing *McDonnell Douglas Corp.,* 411 U.S. at 802). In fact, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs,* 450 U.S. at 254 (citing *Board of Trustees,* 439 U.S. at 25). Assuming that the Court believes there might be some ambiguity concerning direct evidence of retaliation, Billings proves retaliation through the indirect method. Under the indirect method, Billings successfully shows that (1) she engaged in protected activity, (2) she performed her job duties, (3) she suffered an adverse employment action despite satisfactorily performing her job duties, and (4) no similarly situated employees who did not engage in protected activity were treated more favorably than her. *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005).

As discussed *supra*, Harrington made the decision to eliminate technicians in an attempt to reduce costs. He then narrowed down his decision to eliminate only system verification technicians, but when it came to actually terminating employees, he only terminated Billings, one of the two similarly situated system verification technicians. DISPUTED-DSF 41. In essence, Harrington singled out Billings's position and then selected Billings for the RIF. Even if Harrington were to dispute the fact that he did not single out Billings, he would not be able to provide any evidence of such a claim because he did not document his decision-making process in determining who should be terminated in the RIF. DISPUTED-DSF 29, 44. Further, Harrington did not use any objective criteria in his decision to RIF employees and any criteria he used was all "in [his] head." DISPUTED-DSF 39.

Harrington did not terminate Julius Saroka, B&B's other similarly situated system test technician, in the November 2012 RIF that claimed Billings's job. DISPUTED-DSF 41. In fact, Harrington eventually promoted Saroka to an engineering role just like the one that Billings had been discussing with Boddy for many months. Harrington did not see Billings in B&B's future because of her terminal cancer and therefore, he kept her in the system verification technician position, one that he declared obsolete, so that he could articulate a reason for her termination. Billings had inquired about a title change to engineer for months, met with Boddy weekly to discuss the title change, and Boddy was training her for the engineering position. DSF 33. As such, Billings indirectly proves her claims of retaliation.

**III.     Defendant's Motion Fails Because The Parties Dispute Genuine Issues Of Material Facts And Because Plaintiff Establishes The *Prima Facie* Elements Of A Claim Of Failure To Accommodate Under The ADA**

Under the ADA, to establish a claim of failure to accommodate, a plaintiff must show that: "(1) she is a "qualified individual with a disability"; (2) the defendant was aware of her

disability; and (3) the defendant failed to reasonably accommodate her disability." *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010) (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir.2005)).

As discussed above, Plaintiff has established her disability under the ADA and it is undisputed that B&B was aware of Plaintiff's terminal cancer. Plaintiff made several requests for accommodations, specifically for a lighter gas can and laptop, as well as a chair. However, B&B did not accommodate Billings's request for accommodations despite her numerous requests.

After returning from surgery in Fall 2010, Billings had significant lifting weight restrictions and she provided B&B with a note from her doctor that explained her lifting restrictions. DISPUTED-DSF 58. Billings submitted a request for a small gas can to Mike Fahrion, Chris Politsch, Human Resources, and Kevin Nelson so that she could at she could perform her job duties. *Id.* However, B&B failed to accommodate Billings and never purchased a lighter gas can for her. DISPUTED-DSF 58-59. In accordance with her lifting weight restrictions, Billings asked B&B for a lighter laptop, but B&B did not accommodated Billings for that request either even though there were other individuals within Billings's telematics group, performing the same work as her, who had lighter laptops. DISPUTED-DSF 63. Billings explained that a lighter laptop "would have allowed [her] to do her job better. It would have allowed [her] to go longer." *Id.*

Billings requested a chair as a reasonable accommodation from 2009 to 2011. DISPUTED-DSF 60. Billings's first request came twenty-four hours after her TRAM flap surgery. *Id.* B&B did not accommodate Billings on her first request for a chair and instead, Billings was told to look around the office for a chair. *Id.* Billings found a chair in B&B's library, but it was unstable and it ripped the tube from the wound vacuum Billings had attached

16

to her body. *Id.* When the chair from the library did not accommodate Billings's need, she submitted another request for a chair to Human Resources. *Id.* Billings submitted a second request to HR a week later, then two weeks later, and then again two weeks later. *Id.* Each time Laura Sateikis told Billings that she would look into it. *Id.* Billings also asked other individuals at B&B for a chair and, in sum, Billings requested a chair fifteen times. *Id.* B&B never purchased Billings a chair. *Id.* Instead, Billings had to roam around B&B's premises to find a stable chair, her wound vacuum in tow, and after two months, she was able to find a chair that fit her needs. DISPUTED-DSF 60-61. B&B failed to reasonably accommodate Billings, despite her numerous requests.

### Conclusion

WHEREFORE, and for the forgoing reasons, Billings respectfully requests that this Court deny in full B&B's Motion for Summary Judgment.

Respectfully submitted,

/s/ R. Scott Oswald
R. Scott Oswald, Esq.
soswald@employmentlawgroup.com
Nicholas Woodfield (*Pro Hac Vice*)
nwoodfield@employmentlawgroup.com
THE EMPLOYMENT LAW GROUP, P.C.
888 17th Street, NW, 9th floor
Washington, D.C. 20006
(202) 261-2812 (telephone)
(202) 261-2835 (facsimile)
*Counsel for Plaintiff Billings*

Aaron Maduff, Esq.
MADUFF & MADUFF, LLC
ABMaduff@madufflaw.com
205 North Michigan Avenue, Suite 2050
Chicago, Illinois 60601
(312) 276-9000 (telephone)
(312) 276-9001 (facsimile)
*Counsel for Plaintiff Billings*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 16th day of June, 2014, the foregoing Plaintiff's Memorandum of Law in Support Of Plaintiff's Opposition to Defendant's Motion For Summary Judgment was filed with the Clerk of the Court using the CM/ECF System, which will send notification of the filing to the following:

Gerald L. Maatman, Jr., Esq.
Reema Kapur, Esq.
Sara Eber, Esq.
Seyfarth Shaw LLP
131 South Dearborn Street
Suite 2400
Chicago, Illinois 60603
GMaatman@seyfarth.com
RKapur@seyfarth.com
SEber@seyfarth.com
*Counsel for Defendant B&B Electronics Manufacturing Company.*

/s/ R. Scott Oswald
R. Scott Oswald, Esq.

18