# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANET LYNN BILLINGS, | ) |
| Plaintiff, | ) |
| vs. | ) No. 13 C 3576 |
| B&B ELECTRONICS MANUFACTURING COMPANY, INC. | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Janet Billings has sued B&B Electronics Manufacturing Company, Inc. for violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12112(a), 12203(a), the Family Medical Leave Act (FMLA), 42 U.S.C. § 2615, and the Illinois Human Rights Act (IHRA), 775 ILCS 5/2-102, 5/6-101. Billings alleges that B&B discriminated against her based on her disability, retaliated against her for exercising her statutory rights, and failed to accommodate her disability. B&B has moved for summary judgment. For the reasons stated below, the Court grants B&B's motion.

## Background

B&B Electronics is a manufacturer of data communication products. In 1998, B&B hired Janet Billings as a full-time hourly employee, eventually promoting her to engineering technician in 2006. While working for the company, Billings was diagnosed with cancer. She received her first diagnosis in 2003; five years later, she learned that her cancer was terminal. Billings continued to work at B&B throughout this period.

Over the course of her treatment, Billings would submit medical documentation to the company, though she was sometimes told that this practice was unnecessary. When Billings received her terminal diagnosis in 2008, she submitted additional documentation from her health care providers and informed B&B that she would require accommodations for her disability. Thereafter, B&B allowed Billings to use flex-time to attend her medical appointments and assigned her shorter projects so that she could take time off unexpectedly as needed. It is undisputed that Billings was capable of performing the essential functions of her job despite her disability.

Starting in 2009, Billings worked primarily on "telematics" in the "automotive field." Pl.'s Resp. to Def.'s LR 56.1(a)(3) Stmt. ¶ 16. In 2011, however, B&B's management concluded that the company "could no longer be competitive with its telematics/automotive product line" and began to phase out this work. *Id.* ¶ 17. That same year, Sean Harrigan, the president and CEO of B&B, hired Paul Harrington to lead the company's engineering department. Harrington was tasked with doubling B&B's revenue in two years by "making improvements in the engineering department." *Id.* ¶ 13. Harrington initially tried to meet this objective by reorganizing the engineering department into functional groups and by identifying cost savings in travel and training. As a result of this reorganization, Billings was placed in the system test group, though she continued to focus on telematics and automotive work—too much so, in the management's view.

In 2012, B&B conducted two reductions in force (RIFs). B&B's decision to conduct these RIFs was driven, in part, by the acquisition of three technology companies earlier that year. The first RIF, implemented in February 2012, was intended

2

to reduce personnel redundancies with the newly acquired companies. In that RIF, B&B terminated Julius Saroka, the only other technician in the system test group. By August 2012, B&B had determined that Harrington's initial cost-saving measures were insufficient and that it would need to conduct a second RIF "to meet the Company's financial covenants." *Id.* at ¶ 13. Harrigan instructed Harrington to propose six or seven employees for the second RIF. On August 22, Harrington e-mailed B&B's human resources director with a list of seven employees, one of whom was Billings. On November 1, 2012, Billings was terminated along with six other B&B employees. None of those employees were transferred, and Billings's position was not refilled.

Billings filed charges with the Equal Employment Opportunity Commission (EEOC) and the Illinois Human Rights Commission on January 17, 2013 and February 27, 2013 respectively. Billings filed the current lawsuit on May 14, 2013. She contends that her discharge was motivated by her disability, that she suffered retaliation, and that B&B failed to reasonably accommodate her disability.

## Discussion

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the record in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1114 (7th Cir. 2001). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**A.     Discrimination claim**

Billings contends that her discharge was motivated by her terminal cancer. The Americans with Disability Act (ADA) prohibits an employer from discharging an employee "on the basis of disability." 42 U.S.C.A. § 12112(a).[1]  Discrimination under the ADA can be proved either directly or indirectly. *See Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006). Billings cannot succeed under either method.

**1.     Direct method**

Under the direct method, a disabled plaintiff "can present either direct or circumstantial evidence to meet its burden." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Direct evidence is typically "an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)). Circumstantial evidence is "evidence that allows a jury to infer intentional discrimination by the decision-maker." *Buie*, 366 F.3d at 503 (internal quotation marks omitted). This includes evidence of "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Dickerson*, 657 F.3d at 601. For summary judgment purposes, of course, Billings need only show that a reasonable jury could find in her

---

[1] Billings also alleges discrimination and retaliation under the IHRA. The Illinois Supreme Court has adopted for IHRA claims the analytical framework used in federal employment discrimination cases. *Zaderaka v. Ill. Human Rights Comm'n*, 131 Ill. 2d 172, 178, 545 N.E.2d 684, 687 (1989). Because Billings' IHRA claims rely on the same facts as her ADA claim, the Court need not address Billings' IHRA claims separately.

4

favor.

Billings does not cite an admission by B&B, and thus she must rely on circumstantial evidence to show that her discharge was motivated by her disability. As circumstantial evidence, Billings alleges that four "similarly situated" employees were not discharged in the November 2012 RIF. An employee is similarly situated if there are "sufficient commonalities on the key variables between the plaintiff and the would-be comparator[s] to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Any distinctions between the plaintiff and the comparators cannot be "so significant that they render the comparison effectively useless." *Id.*

First, Billings claims that B&B's only other system technician, Julius Saroka, was not discharged in the November 2012 RIF. To support this assertion, Billings cites to the deposition of Paul Harrington, who oversaw the RIF. But Harrington unequivocally testified that Saroka was terminated in B&B's February 2012 RIF—nine months *before* Billings was terminated. Def.'s Mem. in Supp. of Mot. for Summ. J.., Ex. 15, at 96:2-5, 128:24-25, 131:2-8. Second, Billings notes that three other technicians—Jeff Joray, Doug Anderson, and Bill Matthews—were not discharged in the November RIF. But even though these employees have the word "technician" in their job titles, no reasonable jury could find that they are similarly situated to Billings. Anderson and Matthews worked in the CAD group, and Joray worked in the hardware group. Both of these groups had the sort of "busy work" that is typically performed by technicians rather than engineers. By contrast, the system test group, where Billings worked, did

5

not "involve much or any busy work." Pl.'s Resp. to Def.'s LR 56.1(a)(3) Stmt. ¶ 22. Indeed, it is undisputed that "Harrington had never seen the role of technician in system test groups at other companies." *Id.* Thus, because the personnel needs of the CAD and hardware groups were materially different from those of system test group—that is, CAD and hardware required technicians and system test did not—no reasonable jury could find that Joray, Anderson, and Matthews were similarly situated to Billings.

Billings also contends that the process by which B&B selected employees for the November 2012 RIF is circumstantial evidence of discrimination. Specifically, she alleges that B&B did not use objective criteria in conducting the RIF. But the undisputed facts show that Harrington did, in fact, use objective criteria: he ranked the value of each position based on B&B's business plan, taking into account how the three recently-acquired companies would affect B&B's personnel needs in the future. Notably, Harrington terminated both system test technicians, not just Billings.

Beyond pure speculation, Billings presents no evidence to suggest that Harrington had an ulterior motive in selecting her position for the November 2012 RIF. Billings does note, accurately, that Harrington's criteria were never formally documented. Without evidence showing that Harrington deviated from his stated criteria, however, this fact cannot support an inference of pretext. Billings also argues that Harrington's failure to consider employee performance evaluations suggests that the process was not, in fact, objective. But such evaluations are irrelevant in a RIF that is based on whether a particular position (rather than a particular employee) will promote a company's future growth. In sum, Billings's contention about subjective decision making would not permit or contribute to a reasonable inference of

6

discrimination.

Even assuming that B&B did not use objective criteria, no reasonable jury could find that the November 2012 RIF was a pretext for disability discrimination. Although "[t]he even-handed application of objective criteria is an indication that discrimination is not present . . . lack of precision in the articulated standards does not mean that . . . the RIF was necessarily a pretext for [disability] discrimination." *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1014 (7th Cir. 2000) (internal quotation marks omitted). That is, when the evidence of a "bona fide reduction-in-force plan" is substantial, "the absence of objective criteria" is not "probative evidence of discriminatory animus . . . ." *Bashara v. Black Hills Corp.*, 26 F.3d 820, 825 (8th Cir. 1994); *see also Paluck*, 221 F.3d at 1014 (citing *Bashara* with approval).[2] It is undisputed that the November 2012 RIF was bona fide with respect to the six employees who were terminated alongside Billings. Indeed, Billings herself concedes that B&B "determined that it would need to reduce its headcount through a reduction in force to meet the Company's financial covenants" in August 2012 and that Harrington was instructed "to reduce the Engineer department's headcount by 6-7 employees." Pl.'s Resp. to Def.'s LR 56.1(a)(3) Stmt. ¶ 36. Additionally, Billings does not offer any evidence that this otherwise bona fide RIF was

---

[2] Billings also asserts that, under *Christie v. Foremost Ins. Co.*, 785 F.2d 584 (7th Cir. 1986), whenever an RIF is conducted without "any fixed protocols or documented criteria," a reasonable jury may infer that the RIF is a pretext for discrimination. Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 8. Billings overstates *Christie*'s holding. In *Christie*, the plaintiff had "excellent" performance evaluations, his position was not eliminated, he was replaced by an employee whose performance evaluations were "suspect," and the company did not even comply with its own RIF procedures. *Christie*, 785 F.2d at 586-87. On these facts, the court concluded that a reasonable jury could infer that an RIF hadn't been conducted at all and, accordingly, that the defendant's stated reason for discharging the plaintiff was a pretext for discrimination. *Id.* at 587. In Billings's case, by contrast, the existence of a bona fide RIF is not in dispute, and her position was completely eliminated.

also used as a pretext to discriminate against her specifically. For these reasons, no reasonable jury could infer that the RIF was a pretext for discrimination.

Considering the evidence offered by Billings under the direct method, no reasonable jury could find that her discharge was motivated by her disability. Billings therefore cannot sustain her claim under the direct method.

### 2. Indirect method

To prove retaliation under the indirect method, Billings must show that (1) she is disabled under the ADA, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action (in RIF cases, a discharge), and (4) similarly situated employees without a disability were treated more favorably. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009); *see also Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000) (noting that in RIF cases, a plaintiff must show "that she was discharged and that other, similarly situated employees who were not members of the plaintiff's protected class were treated more favorably"). Once the plaintiff establishes a prima facie case of discrimination, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the defendant does so, the plaintiff must then show the reason was pretextual. *Id.*

As discussed in the previous section, no reasonable jury could find that Joray, Anderson, and Matthews were similarly situated to Billings. Billings therefore cannot make out a prima facie case under the indirect method. Even if Billings could do so, no reasonable jury could find that B&B's stated reason for discharging Billings—a bona fide RIF—was a pretext for discrimination. Accordingly, B&B is entitled to summary

8

judgment on Billings's discrimination claim.

B.     Retaliation claim

Billings contends that she was terminated in retaliation for asserting her rights under the ADA, IHRA, and Family Medical Leave Act.[3] A plaintiff may prove retaliation either directly or indirectly. *See Povey v. City of Jeffersonville*, 697 F.3d 619, 624 (7th Cir. 2012). Billings cannot succeed under either method.

1.     Direct method

To prove retaliation under the direct method, Billings must show that (1) she engaged in protected activity, (2) she suffered a materially adverse employment action, and (3) there was a causal link between her protected activity and the adverse action. *Povey*, 697 F.3d at 624. A "causal link" can be shown via admissions or circumstantial evidence, including "evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007).

Billings does not cite an admission by B&B, and thus she must rely on circumstantial evidence of retaliation. To this end, Billings contends that B&B denied her requests to use flex-time for medical appointments. This contention, however, misconstrues the record. It is undisputed that B&B allowed Billings to use flex-time for appointments "so long as she made up the time within the same work week and had her supervisor's approval." Pl.'s Resp. to Def.'s LR 56.1(a)(3) Stmt. ¶ 69. The only

---

[3] Billings abandoned certain of her claims by failing to address them in her response to B&B's summary judgment motion. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003). Accordingly, the Court does not address these claims.

9

requests that were denied, in Billings's recollection, were requests to roll over a previous week's flex-time into the following week—a violation of B&B's company-wide policy. Pl.'s Mem. in Opp'n to Mot. for Summ. J., Ex. 1 (Billings Dep.), at 499:19-501:11. Denials based on a neutrally-applied company policy are hardly evidence of retaliation. Although Billings feels that B&B should have granted her an exception to accommodate her medical needs, she concedes that this request was never actually communicated to B&B. Pl.'s Resp. to Def.'s LR 56.1(a)(3) Stmt. ¶ 69. Moreover, it is undisputed that Billings's supervisor told Harrington that Billings's medical appointments had "no impact" on her work performance. Def.'s Mem. in Supp. of Mot. for Summ. J., Harrington Dep., Ex. 15, at 44:12-45:2. On this record, no reasonable jury could find that Billings's requests to use flex-time had anything to do with her termination.

Billings also points to B&B's denial of her request for an exception to the company-wide vacation policy. Unlike her requests to use flex-time, Billings did not explicitly present this request as an accommodation for her cancer treatment, and Harrigan testified that he did not understand it as such. True, Billings's e-mail requesting the exception mentions that she is a terminal cancer patient and that she was seeking an exception for "bucket list trips." From this language, Billings suggests, Harrigan would have "understood her e-mail to be a request for accommodation." Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 13. Billings's speculation about how Harrigan interpreted her e-mail, however, is insufficient to show a genuine factual dispute. Without a more direct connection between the vacations and Billings's medical treatment, no reasonable jury could infer that Harrigan understood this language to be a request for accommodation.

Finally, Billings contends that her request for FMLA paperwork on October 23, 2012 resulted in her termination on November 1, 2012. The evidence is undisputed, however, that Billings was selected for the November 2012 RIF in August 2012—two months before she requested FMLA paperwork. Accordingly, no reasonable jury could find that the proximity between Billings's request for FMLA paperwork and her termination was anything more than a coincidence.

### 2. Indirect method

To prove retaliation under the indirect method, Billings must show that (1) she is a member of a protected class, (2) she was meeting B&B's legitimate expectations, (3) she suffered an adverse employment action, and (4) B&B treated similarly situated employees without a disability more favorably. *Dickerson*, 657 F.3d at 601-02. If the plaintiff establishes a prima facie case of retaliation, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Lloyd*, 552 F.3d at 601. If the defendant does so, the plaintiff must then show that reason to be pretextual. *Id.*

As discussed previously, no reasonable jury could find that Joray, Anderson, and Matthews were similarly situated to Billings. Billings therefore cannot make out a prima facie case under the indirect method. Even if Billings could do so, no reasonable jury could find that B&B's stated reason for discharging her—a bona fide RIF—was a pretext for discrimination. Accordingly, B&B is entitled to summary judgment on Billings's discrimination claim.

### C. Accommodation claim

Under the ADA, an employer's failure to make reasonable accommodations for a

11

known disability of an employee constitutes prohibited discrimination. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008) (citing 42 U.S.C. § 12112(b)(5)(A), 12112(a)). To sustain a claim of failure to accommodate, Billings must show that (1) she is a qualified individual with a disability, (2) B&B was aware of her disability, and (3) B&B failed to reasonably accommodate her disability. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir.2011). Billings contends that B&B failed to accommodate her disability by refusing to provide her with a new chair, a lighter gas can, and a lighter laptop computer. As a threshold matter, however, Billings does not respond to a dispositive argument advanced by B&B.[4] To prevail on an accommodation claim, a plaintiff must show that she "needed an accommodation to perform the essential functions of the job at issue . . . ." *Brumfield v. City of Chicago*, 735 F.3d 619, 633 (7th Cir. 2013). Billings concedes that she was able to perform the essential functions of her job without these accommodations. First Am. Compl. ¶ 67; Pl.'s Resp. to Def.'s LR 56.1(a)(3) Stmt. ¶ 57. Given this concession, she cannot sustain her claim.

## Conclusion

For the foregoing reasons, the Court grants B&B's motion for summary judgment [dkt. no. 48] and directs the Clerk to enter judgment in favor of the defendant. The trial date of December 1, 2014 is vacated.

_____
MATTHEW F. KENNELLY
Date: October 10, 2014   United States District Judge

---

[4] Billings does not address in her response brief her claims that B&B failed to accommodate her requests for breaks, flex-time, and an exception to the vacation policy or her claim that B&B excluded her from company activities. As noted above, when a party fails to address a claim in a summary judgment brief, the claim is forfeited. *See Palmer*, 327 F.3d at 597–98. Accordingly, the Court need not address these claims.